May it please the Court, my name is Amos Lawrence and I represent the petitioner in this case, Carlos Cardona-Rivas, who has appealed the BIA's holding that he is statutory ineligible for political asylum or withholding of removal as an alien who has persecuted others in the past. Although my client denied ever persecuting others in the past and denied in turn ever admitting to an asylum officer that he did so, the BIA in this case held in reliance upon that officer's testimony that my client's testimony that he killed and abused gorillas and the villagers who harbored them constituted persecution with the meaning of the act. In review of this holding, it bears emphasis foremost that the BIA's finding of past persecution in this case was based on a significantly broader range of conduct than the immigration judge's finding. In particular, the immigration judge did not find any past persecution based on my client's treatment of gorilla soldiers, and he acknowledged that any testimony concerning alleged killing of gorilla collaborators was ambiguous. And although the BIA had the authority, certainly, to review de novo these findings and make its own interpretation. I think the clock is not working yet, so. You know, it seemed to me the worst word, as at least it was translated, was that he cut off the villagers. Yes. Now, does he have an alternative or does he have an explanation? What was the word he would have used that could have been translated that way? Well, I think two things. One is, assuming he used a word that could have been interpreted that way, he's maintaining that he's not so sure the translator translated correctly. But I think it's a plausible explanation that we beat and cut them up, meaning they were bruised or cut by being beaten. Oh, they were bruised or what? Maybe bruised or cut as a result of a beating. You know, we cut them up. I think the judge and the BIA assumed this somehow implied some knife or sharp object or lacerations, and yet that's sort of an assumption that we're maintaining is not supported by the record. Do we have an oral transcript of the IJ hearing? I beg your pardon, Judge? Is there an oral record of the IJ, of the hearing, so we could hear what he said in Spanish? There is, but he didn't say this before the judge. He denied ever saying that. He said it in the asylum officer's interview. Oh, the asylum officer. Now, I believe they tape those now. I'm not sure they taped them when he had his interview. The asylum officer is basing this on his notes and his recollections. I think the difficulty is that your client produced a translator, and the asylum officer thought the translator was reliable. Certainly. Well, in asylum interviews, you're obligated to bring your own translator, and typically people bring a friend or someone else, and we have no doubt that this person was bilingual. The question is, is when you have such a narrow range of language that could be subject to subtle differences in interpretation, did this translator, who's not a professional, translate that absolutely accurately? If the statements were less ambiguous, it would be hard to argue that this was sort of a possible subtle misinterpretation, but as you point to this language and cutting them up, could that be something that a nonprofessional translator could sort of miss the point of slightly or slightly mislead the asylum officer? And I think it was incumbent upon the asylum officer to follow up on that. This was an unrepresented client who didn't have the opportunity to have the lawyer say, you know, I want to ask some questions at the end because I'm not sure this was clarified very well. He said, we used to do that. And we're maintaining that it's not even clear that he, the judge in his decision, put a lot of emphasis on the fact that he used the third person plural. It's not exact. That's another area where it could have been mistranslated to give an entirely different meaning, as opposed to him saying, our unit used to do that, or, and the translator saying, we. So there, on that level, I think there's a lot of room for misinterpretation. And your argument would be that he clarified this at the hearing before the I.J.? Yes. Before the immigration judge, he denied ever saying that, in addition to denying the actual conduct. You have a very tough standard of review to overcome. It seems that if the I.J. believed the interrogator at the intake hearing and thought that the translator was reliable, it's very tough to overturn the I.J. I agree with that, Your Honor. But the asylum officer is acknowledging that he's not fluent in Spanish. It seems he's a good translator. And we're not contesting that he got the majority of this interview wrong. What I'm maintaining is, on a question that's so significant that he was going to deny him on, it would seem that if he had asked a few more questions, it would have clarified whether it really meant, did you do this? The BIA put a lot of emphasis on the fact that he said yes in response to, have you ever harmed anybody because of political opinion before? And we're maintaining that that comment is also ambiguous because he could assume that hurting other guerrilla soldiers was a political act. And yet, in accordance with the established precedent, that's not considered a ---- But it's very hard based on what we have before us to do anything. I acknowledge that, Your Honor. But if the ambiguity took place in the immigration hearing itself, where the judge was interpreting and there was a chance for cross-examination and clarification and then the record was still ambiguous, I think you'd weigh in favor of accepting the immigration's view. But this is a hearsay testimony based on an asylum officer who is recollecting the interview on the basis of notes. So it's more attenuated in that circumstance. And in sum, I think my client deserves the benefit of the doubt in the absence of the asylum officer asking more questions. And I think it is incumbent upon him to ask more questions, particularly where there's an unrepresented client. The second question is, even if he did these deplorable acts, are they persecution? And there's a long line of authority that we've quoted, cited in our brief that basically says, however deplorable acts of ---- for instance, they have one where they think the military is beating and abusing a suspected guerrilla collaborator in custody, and they said that wasn't on account of political opinion, however deplorable or how reprehensible. So while we're maintaining that my client did not say these things, it did not persecute others, the second issue is whether legally those are acts of persecution anyway. And since the BIA did not adopt the IJ's decision but expanded upon it, we're maintaining that we're entitled to raise that issue in this appeal also. Do I deserve some time for rebuttal? Thank you, Judge. May it please the Court, my name is Victor Lawrence, and I represent the Attorney General. This Court should deny this petition for review. The petitioner's own admissions to his asylum officer serve as substantial evidence supporting the Board's finding that the petitioner was a persecutor and therefore ineligible for asylum. The petitioner's admissions here leave no doubt that he ordered, incited, assisted or otherwise participated in persecution. And this Court reviews this case under this substantial evidence standard. Therefore, all findings of fact must be upheld unless any reasonable adjudicator would be compelled to conclude to the contrary. And we submit that under ---- Well, he did contest that. He didn't make these admissions at the immigration hearing, hearing before the immigration judge. Right. He said, well, I didn't say that, and the translator embellished it. So we just basically it comes down to credibility finding, doesn't it? Well, in a sense it is similar to a credibility finding. What the judge did, the immigration judge, he weighed the testimony of the several years, I think seven years of experience at the time in conducting interviews with asylum applicants who, by the way, did testify that she did understand Spanish a little bit. She didn't say she was fluent. And the immigration judge had to determine, well, who do I believe here? An asylum officer with years of experience who has credibly showed that she has a consistent pattern of the way she conducts these interviews and who has written her notes and who testified credibly in explaining her notes, and she testified that she heard this asylum applicant say that he was engaged in persecution, not ---- I understand the whole argument Mr. Lawrence is making about, Mr. Amos Lawrence is making, making about the idea of the issue with the word we, but if you look at page 105 of the record, the asylum officer was specifically asked, about whether she actually heard this asylum applicant say that he was the one who engaged in these persecutory acts. And she says affirmatively, yes, she did hear that. So I really submit that these issues with respect to translation are purely speculation. My opposing counsel wasn't there either, but you have this issue where it's coming before the immigration judge and he's listening to the asylum officer with years of experience testifying, he believed that in his mind, her testimony was weighted greater than that of the asylum applicant. Did he make ---- refresh me. Was there a specific adverse credibility finding here? Well ---- Yes or no. I would say, I would say yes to the extent that this is an adverse credibility case. He clearly said ---- No, no. I mean, I'm asking you, in the words of the IJ's decision, did the IJ say, I'm making a specific adverse credibility finding? No. That is not in the decision, Your Honor. So where does that leave us under our case law, which basically says if there's no adverse credibility finding, we have to take the applicant's testimony as true? Well, and I know exactly the case law to which you refer, Your Honor, but I would say that this is not your typical adverse credibility case where that case law would come into effect. In a typical adverse credibility case, you're not weighing two different versions of one event. You're weighing just the applicant's version and whether that applicant is credibly establishing his burden of proof. Right. Here, we didn't even get that far, really, because we determined, the immigration judge determined he was ineligible for asylum. He didn't get to the point of having to credibly establish his burden of proof for asylum. The credibility is the entire issue here, because if you ---- if you credit his testimony that I didn't say that was a bad translation, then it's an entirely different case. This is what I'm struggling with, because if you would say there is an exception to the adverse credibility rule because, how do you finish the sentence in an opinion? How would you finish that sentence? Yes. Well, I would backtrack and suggest that this is not an adverse credibility case. Well, it doesn't have to be. Does it have to be, you ask? Sure, it does. I mean, you either believe it's a ---- you have to believe the applicant or you believe the asylum officer, or you say there is a third truth that somehow something got lost in translation. Well, I think what the immigration ---- I understand what you're saying about weighing testimony, but when you get into weighing testimony, usually at this juncture, they say, well, I didn't believe the Petitioner because of X, Y, and Z. And it would be certainly understandable if the immigration judge said I didn't believe him because I had a credible testimony by the asylum officer. Well, I mean ---- I'm just trying to ---- I'm struggling to fit this within our case law. Okay. Well, I think what the immigration judge did do was he outlined what the immigration ---- what the applicant said and what the asylum officer said in her testimony, and said that based on his consideration of those testimonies, he credited the asylum officer. And I think that's enough under Ninth Circuit case law to suggest that that is, if you wanted to put this in the adverse credibility realm, that would be enough to say that that's an adverse credibility finding. I know I keep switching on that, but ---- Well, I know. Let's explore that for a second. Sure. Why don't you ---- why do you think that it's not an adverse credibility case? I know it's not the typical case as you've described it, but we've had other cases where there are documents and testimony, and if in absence of specific findings where you have to do some weighing of contradictory evidence, and we say, well, you know, you've got to take that extra step and make the adverse credibility finding. So what's different about this case, in your view? I would say the difference is that in the typical adverse credibility case, you've already leapt the hurdle of getting past any statutory bars to asylum, and you're on your way towards proving whether you have a credible claim of asylum. Here, he didn't even get to that point. Not to interrupt, but we ---- don't you have the same considerations on eligibility when the question is the time of entry? So I don't think we can draw the line on eligibility versus the secondary stage. Okay. That's a good point, Your Honor. But if you want to categorize this as an adverse credibility case, I still think you're within Ninth Circuit law by saying that this was, in a sense, an adverse credibility finding, and it was explicit. He explicitly said, I am crediting the asylum officer's version of events rather than the applicant's. He believed that the applicant initially told the asylum officer that he engaged in these persecutory acts. And that's so clear from the record and clear from the immigration judge's opinion. Do you want to point to the record where you find that clear statement made? That? The I.J.'s opinion where he says that. Sure. I would, in the immigration judge's opinion, I would look at the administrative record starting at page 54, where the immigration judge states that the service, being the Immigration and National Registration Service, brought forward the testimony of the asylum officer. And then he goes through Ms. Helen Waku is the name of the asylum officer. And he talks about how she reviewed her notes and had a very clear recollection of the interview. And he went on to say that her testimony, that it was a very detailed matter in which he conducts the asylum interviews. I'm on page 55. And that she remembered the fluency of the interpreter and that she didn't feel that there were any interpretation problems with regard to translation. And he continues with the immigration judge continues talking about Ms. Waku's testimony from page 54, 55, 56, and into 57. Now, on page 56, he said, given the testimony of Ms. Waku and the consistency of her presentation, including her notes, I'm on the last paragraph, which the Court notes are contemporaneous with the interview of 1997, and, indeed, as she testified simultaneous with the interview, the Court accepts these notes as providing information that, indeed, contradicts what is the Respondent's testimony at the hearing of February 8, 2001. And then he talks about, a little bit about the Respondent's testimony, the petitioner now, Mr. Cardones-Rivas. And he discusses the issue of the possible confusion in translation, but then comes back and talks about some of the specific things that the asylum officer brought forward on page 58, the specific questions about whether or not what he did as far as cutting up people or whether he killed gorillas. And in sum, on page 59, the Court has the Respondent's denials that he gains in persecutorial acts, in the first full paragraph, and he has the asylum officer's persuasive testimony and notes. And then I think very explicitly in the second full paragraph, the Court does discount the Respondent's testimony, if you will, Judge Thomas. Yes. I see it. Yes. I would submit that that is an adverse credibility finding and explicit. He discounts the Respondent's testimony and he accepts the testimony and notes of the asylum officer in the case. So he doesn't use the language of the typical specific finding, but he does use the But the implication is rock-solid clear. I mean, you can't look at that and say to yourself, you know, it's not clear whether the judge believes this guy or not. He's saying he discounts the Respondent's testimony and accepts the testimony of the asylum officer. So I think that's a clear finding, and it's supported by substantial evidence. If you want to put it in the adverse credibility realm, that is a specific and cogent reason. He went through the testimony of the asylum officer, compared it to that of the applicant, and determined that the asylum officer's testimony was more credible. And he discounted the applicant's for the reasons that he suggested, a specific and cogent reason. It's supported by substantial evidence. There's no facts in the records that would compel a contrary conclusion. As Judge Fletcher stated earlier, it's a tough standard to get over. Sure. And for those reasons, we would submit that the Court should affirm the Board and deny this petition. I take it that there's no issue with respect to the waiver, an exhaustion argument that we've made. I haven't heard any questions on that, but I'm happy to address it if there are any. I think the briefs address it. If you'd like to elaborate, you can, but you're a little over your time. Okay. The only thing I'd quickly point out is that I believe that the argument of the Board that because it was a de novo review of the Board somehow exculpates him from raising the argument before the Board is not accurate. Despite the fact that it was a de novo review by the Board, the immigration judge found on the same issue, said that the persecution was on account of a protected activity. Therefore, in order to preserve that argument, that it was not on account of a protected activity, the Petitioner was obligated to exhaust that with the Board of Immigration in the first instance with this Court. Not exhausting that is a failure, is a waiver and a failure to exhaust administrative remedies. As to any cat claim, he didn't raise it before the IJ. He did raise it before the Board, and I'm not sure he raises it again before us. That's correct. So it's not within this Court's review. As to the law, there could be deferral even if someone had been involved in persecution. Isn't that correct? I don't believe that's correct, Your Honor. Two parts to cat. One's deferral and one is the... Withholding. Yeah. I think if you look at HCFR 208.16d, I believe that would show you that now, I understand you might be under the impression because of the next case where that issue was not precisely raised, but under the Convention Against Torture... Give me that section again, would you? Sure thing. Just to educate myself. Yes, sir. HCFR 208.16d. And that's off the top of my head, but I'm pretty sure that's correct. I apologize. So, in fact, an applicant would not be able to make a claim for Convention Against Torture if, in fact, he was ineligible for the same reason he was ineligible for asylum and withholding or removal based on the fact that he was considered to be a persecutor or one who ordered, assisted or participated or otherwise participated in persecutory acts. Okay? So I would submit... I think it's 1208.16d, isn't it? Oh, I... It could be. You can look it up. It could be that that did change to 1208. It originally was 208.16, now it's 1208. It's also 8 U.S.C. 1231, somewhere in there, would indicate the same thing. But in any respect, he didn't raise the CAD claim. In this case, I was just educating myself. Sure thing. So, anyway, once again, I would suggest that substantial evidence supports the Board's finding here, and I submit that the Court should deny this petition and inform the Board of Immigration Appeals. Thank you. Okay. Two very brief points, Your Honors. First of all, this is not a case where believing in the credibility of the asylum officer necessarily follows that my client is untruthful. I mean, there's a middle ground. We're not alleging the asylum officer was incredible. He heard the translator just say these things, and yet those are not mutually exclusive findings, as in many criminal trials where he said and she said. Number two, the immigration judge is making a ruling at the end of the case based on his overall impression of oral testimony without a written transcript. The BIA focuses on the specific parts of the transcript which support his findings of past persecution, and it boils down, in our estimation, and if you review their decision at page 4, took answer to one question. What happened to the villagers who hid the gorillas? We would punish them by beating them and cutting them up. This is one answer, not an overall impression as the IJ's decision implies. And I think the BIA more decisively focuses on the part of the record, and the government's position depends on that answer being interpreted correctly. And we maintain that that's not enough to find my client ineligible for this kind of relief. Concerning the waiver issue, we've made one of our legal arguments is that this does not legally constitute persecution based on the fact that they're combatants. The BIA made a finding that my client abused and killed gorillas. The IJ did not make such a finding. So there was no point to raise that before the BIA. They expanded upon that finding, and we addressed it in this appeal. Since they found my client a persecutor and bought her grounds, we were obligated to address that. Some place in the record, it says that when asked about the gorillas, he said we had to catch them outside the village. Yes. I don't know quite what you read into that, but that was the case. Well, that is the previous answer. We would catch them outside the village, and sometimes we'd have to harm them in front of them, kill them in front of children. I honestly don't know what that meant. I would – but I think that was – that answer was not – they didn't attach apparently much weight to that, because I think it is ambiguous. I guess theoretically that could mean some heinous act. But without more, it would seem that maybe that means killing gorillas in combat. Thank you, Your Honor. Thank you very much. The case just heard will be submitted. Is Mr. Redis there? Good. We'll proceed to the next case on the oral argument calendar, which is Singh v. Ashcroft. Thank you. May it please the Court. My name is George Redis, appearing on behalf of the Petitioner Harper John Singh and his appeal of the Board of Immigration Appeals' decision. In the present case, the Board of Immigration Appeals upheld the immigration judge's decision that Petitioner had engaged in the persecution of others and was thereby ineligible for asylum and withholding of removal relief. Petitioner argues that the Board of Immigration Appeals' decision is not supported by substantial evidence. Specifically, Petitioner argues that although the BIA conducted substantial analysis into determining that Petitioner had participated in alleged mistreatment of others,
judges: B. Fletcher, Noonan, Thomas